# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

GEORGE WILLIAMS, IV,

    Petitioner,

v.                                    Case No. 3:18-cv-1228-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

**I.   Status**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). He challenges a state court (Duval County, Florida) judgment of conviction for first degree murder and burglary armed with explosives or a dangerous weapon. Id. at 1. He is serving life imprisonment. Id. Respondents filed a Response (Doc. 12) with exhibits (Docs. 12-1 to 12-12; "Resp. Ex."). Petitioner filed a Reply (Doc. 14). This case is ripe for review.

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

2

> argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v.

3

>  Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

>  Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v.

4

> Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[1] supra, at 747–748, 111 S. Ct. 2546; Sykes,[2] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural

---

[1] Coleman v. Thompson, 501 U.S. 722 (1991).

[2] Wainwright v. Sykes, 433 U.S. 72 (1977).

5

> rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[3] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[3] Murray v. Carrier, 477 U.S. 478 (1986).

6

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

7

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

9

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## III. Analysis

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to object after one of the jurors responded, "Yes, with grave reservations," when the jury was being polled about its verdict. Doc. 1 at 5. In his Reply, Petitioner additionally argues that the trial court erred by not "investigating" or "inquiring further" into the juror's response. Doc. 14 at 1-3. Respondents contend that Petitioner's ineffective assistance of counsel claim is unexhausted and otherwise without merit. Doc. 12 at 13-15.[4]

Petitioner raised the ineffectiveness claim in his Florida Rule of Criminal Procedure 3.850 motion. The state court denied the claim:

---

[4] Because Petitioner did not raise the trial court error claim until he filed the Reply, which as discussed below is improper, Respondents did not address it.

10

At the end of the trial, when the jurors were polled about whether they agreed with the verdict, the twelfth juror stated, "yes, with grave reservations."[5] The Defendant alleges counsel was ineffective for failing to ask the Court to inquire further to ascertain whether the verdict was actually unanimous. Counsel did raise the issue in a motion for new trial, but the Court denied the motion, finding counsel's failure to make a contemporaneous objection required it to use a fundamental error analysis. It concluded the error was not fundamental.

A defendant is constitutionally entitled to a unanimous verdict. Florida Rule of Criminal Procedure 3.440 provides that unless disagreement is expressed by one or more of the jurors, the verdict shall be entered of record and the jurors discharged from the cause, but no verdict may be rendered unless all the trial jurors concur in it. Rule 3.450 provides that if a juror dissents, the court must direct that the jury be sent back for further consideration.

At issue here is whether the juror's remark about "reservations" constituted disagreement with or dissent from the verdict. In Brutton v. State, 632 So. 2d 1080 (Fla. 4th DCA 1984), a juror said she agreed with the verdict but then said, "In my heart I felt that they were not guilty, but if with them-in reality they are but-I don't know how to explain it to you." The court erred in coercively questioning her when it should have declared a mistrial. A juror in Jackson v. State, 804 So. 2d 357 (Fla. 4th DCA 2001)[,] told the court the guilty verdict was his, but added, he had "changed his mind to agree with the rest of them." Because this juror indicated "without reservations that the verdict was not his," the court in that case should have sent the jury back to deliberate further.

---

[5] The trial transcript reflects that the juror stated: "It is, with grave reservations." Resp. Ex. 6 at 876.

11

> In contrast, the juror in this case expressly told the Court the verdict was his. He did not disavow it. He did not assert or even hint he wanted to vote for acquittal but went along only because the other jurors had voted to convict or that he was pressured to agree with them. Expressing a reservation is not the same as expressing a disagreement or dissent. Counsel was not ineffective for failing to object to lack of unanimous verdict where each member of the jury told the Court he or she had voted to convict.

Resp. Ex. 11 at 8-9 (internal citations omitted).

Petitioner did not appeal the postconviction court's denial of his Rule 3.850 motion. Therefore, this claim is unexhausted and procedurally barred, because Petitioner did not afford the state courts one full round of review prior to filing the Petition. See Nieves v. Sec'y, Fla. Dep't of Corr., 770 F. App'x 520, 521 (11th Cir. 2019) (noting that "[i]n Florida, exhaustion usually requires not only the filing of a [Rule] 3.850 motion, but an appeal from its denial"); see, e.g., Hill v. Sec'y, Fla. Dep't of Corr., No. 19-81215-CV-ALTMAN, 2020 WL 5217186, at *4 (S.D. Fla. Aug. 6, 2020) report and recomm. adopted, 2020 WL 5216526 (S.D. Fla. Sept. 1, 2020). In an attempt to show cause to excuse his procedural default, Petitioner argues that he "had an inadequate law clerk that misle[]d [him] and said [he] didn't have to file [an] appeal to [his] 3.850 and go to the next level," and that he is "not well versed on the law and had to depend on the guidance of the law clerk." Doc. 1 at 9. However, Petitioner's "ignorance of the law as a pro se litigant" and his reliance on mistaken advice from a prison law

12

clerk do not constitute cause to excuse the procedural default. See Francis v. Sec'y, Dep't of Corr., No. 8:15-cv-2205-T-36AAS, 2018 WL 3093481, at *4 (M.D. Fla. June 22, 2018) (citing Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993) ("[I]gnorance of available post-conviction remedies cannot excuse a procedural default"); McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (neither a lack of legal education nor pro se status constituted cause for petitioner's procedural default); Harmon v. Barton, 894 F.2d 1268, 1275-76 (11th Cir. 1990) (a petitioner's pro se status was insufficient to establish cause); Whiddon v. Dugger, 894 F.2d 1266, 1267 (11th Cir. 1990) (misadvice from inmate law clerks during collateral proceedings does not establish cause)). Thus, Petitioner has failed to show cause to excuse his procedural default. He also has not alleged facts justifying application of the fundamental miscarriage of justice exception to the procedural bar.

Regardless, the claim is without merit. The juror affirmatively acknowledged that the verdict was his, but that he had "grave reservations." He did not disavow the verdict, state that he disagreed with the verdict, or state that he did not participate in the decision to reach that verdict. As the postconviction court reasoned: "Expressing a reservation is not the same as expressing a disagreement or dissent." Cf. United States v. Jefferson, 258 F.3d 405, 411 (5th Cir. 2001) ("A juror may have reservations and still find the evidence presented to be sufficient to meet the burden established by the

13

standard of beyond a reasonable doubt."). Also, even assuming deficient performance, Petitioner has not shown prejudice. Petitioner has failed to show a reasonable probability that the outcome of the trial would have been different had counsel objected. Petitioner is not entitled to federal habeas relief on this claim.

Insofar as Petitioner raises a claim of trial court error for the first time in his Reply, the claim is not properly raised. See Cooper v. Sec'y, Dep't of Corr., No. 8:08-cv-5-T-27MAP, 2011 WL 795812, at *7 (M.D. Fla. Mar. 1, 2011) ("In sum, Petitioner did not raise this claim in his petition, did not seek leave to amend to add this claim, and is barred from raising it in his Reply, since Respondent has not been afforded an opportunity to address it."). Regardless, this trial court error claim is also unexhausted, as Petitioner did not raise it on direct appeal or in any postconviction proceeding. He has shown neither cause nor prejudice to excuse the procedural bar, nor has he shown a fundamental miscarriage of justice would result if the Court did not consider the claim on the merits.

Accordingly, Ground One is due to be denied.

**B. Ground Two**

Petitioner claims that his trial counsel was ineffective for failing to object after the trial court "gave [the jury] a deadline" to reach a verdict. Doc. 1 at 12. He contends that "[a]t the end of the trial[,] the jurors w[ere] having [] difficulty

14

reaching a verdict." Id. He argues that the trial court deviated from the "standard instruction for [a] deadlock[ed] jury." Id.

Petitioner acknowledges that he did not raise this claim "in any of [his] motions," because he "just discovered this ground while going through [his] paperwork." Id. In his Reply, he contends that this Court should overlook his procedural default because the claim has merit and is substantial. Doc. 14 at 4. Respondents argue that this claim is unexhausted and procedurally barred. The Court agrees.

Petitioner's reasoning for failing to raise the claim in state court—that he just discovered it—is insufficient to excuse the procedural default. Petitioner was present in the courtroom during the trial when the facts supporting this claim occurred. He has shown neither cause nor prejudice to excuse the default. And Petitioner has not shown a fundamental miscarriage of justice will result if the claim is not adjudicated on the merits. Nor is this claim a "substantial" one.

While the jury was deliberating, the following occurred outside of their presence:

> THE COURT: The defendant is present.
>
> It's now 9:40 and the jury's still deliberating. So I'm going to bring them out and give them two options, to either stay for another 20 or 30 minutes and see if they can reach a verdict or come back tomorrow morning at five minutes till 10:00. And we'll send them

15

out. We'll send them back to the jury room to continue their deliberations a few minutes before 10:00, and we can do our morning calendar. Do both sides agree?

[DEFENSE COUNSEL]: Yes, Your Honor.

[THE STATE]: Yes, Your Honor.

Resp. Ex. 6 at 32-33. The Court then had the jury brought into the courtroom and the following discussion occurred:

THE COURT: Y'all can just stand together, if you'd like.

All right. All 12 members of the jury are back in the courtroom now.

And it is getting late. I don't want to keep us here any later than a few minutes after 10:00 o'clock, so I'm going to give y'all two options. If you would like to stay for another 20 or 30 minutes at the most and see if you can arrive upon verdicts, then that would be fine. But if you feel like you're not going to be able to do that within the next 20 or 30 minutes, then we could just go ahead and call it a night for tonight, and what we'll do is come back tomorrow morning at about five minutes till 10:00. I'll send you back into the jurors' room to begin your deliberations.

So do y'all want to go back in there [and] talk about it?

JUROR: We'll stay.

THE COURT: You'll stay. Okay. So if you haven't - - **I don't want to rush you-all. I want you to take as long as you need today, tomorrow and any other time we have to use.** But I will tell you, if at 10:00 - - after 10:00, if you have not arrived upon verdicts, then I'm going to call you out and send you

16

> home, and we're going to start back up tomorrow morning at five minutes to 10:00 a.m.
>
> Please step back. We'll patiently wait until ten after 10:00.

Id. at 33-34 (emphasis added). The jury resumed their deliberations at 9:42 p.m. Id. at 34. The trial judge asked both sides whether they wanted to put anything on the record before they recessed again, and both sides answered in the negative. Id. at 34-35. Thus, the court went into recess. Id. at 35. Around 10:10 p.m., the jury returned its verdict. Id.

The trial court did not coerce, threaten, or pressure the jury into reaching a verdict. Rather, given the late hour, the trial court gave the jury the option of continuing for 20 to 30 minutes longer or coming back the next day. The trial court specifically advised the jury that it was not rushing them to conclude their deliberations, but simply did not want to keep them there much later. There was no basis on which Petitioner's counsel could object.

Petitioner argues that the jury "was having [] difficulty reaching a verdict," and the trial court did not give them a proper Allen[6] charge. Doc. 1 at 12. The transcript refutes Petitioner's assertion. Approximately one hour before

---

[6] Allen v. United States, 164 U.S. 492 (1896). An Allen charge may be "given when it appears that the jury is having difficulty reaching a verdict." Blanding v. State, 298 So. 3d 712, 714 (Fla. 1st DCA 2020). "'In giving an Allen charge, the trial court must avoid: (1) coercive deadlines, (2) threats of marathon deliberations, (3) pressure for the surrender of conscientiously held minority views, and (4) any implication of a false duty to decide.'" Id. (quoting Gahley v. State, 567 So. 2d 456, 459 (Fla. 1st DCA 1990)).

17

the trial court gave the jury the option of continuing or going home for the evening, the jury had submitted the following question to the trial court: "If we decide armed burglary, can we also decide second-degree murder or only first degree?" Resp. Ex. 6 at 31. This question does not imply the jury was deadlocked or otherwise having difficulty reaching a verdict. Petitioner's trial counsel was not deficient for failing to object to the trial court's options given to the jury, and Petitioner has not shown resulting prejudice. And to the extent Petitioner argues counsel was ineffective for failing to request an Allen charge be given, he has shown neither ineffectiveness nor resulting prejudice.

Therefore, Ground Two is due to be denied.

Accordingly, it is

**ORDERED**:

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals the denial of his Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

18

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of January, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 1/11
c:
George Williams, IV, #J52586
Counsel of Record

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.